JOAN FABRIZI *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT, ET AL.

(5258)

DUPONT, C. J., BORDEN and SPALLONE, JS.

Argued May 8—decision released September 1, 1987

*Thadd A. Gnocchi,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Robert E. Walsh* and *Jospehine Lauriello,* assistant attorneys general, for the appellant (named defendant).

*Joan Fabrizi,* pro se, the appellee (plaintiff).

SPALLONE, J. The defendant administrator of the Unemployment Compensation Act (administrator) is appealing from the decision of the trial court sustaining the plaintiff's administrative appeal.

The administrator denied the plaintiff's claim for benefits on the ground that she left work voluntarily and without cause. The plaintiff then appealed to an appeals referee who, after a hearing de novo, made findings of fact[1] and concluded that the claimant was disqualified from receiving benefits under General Stat-

---

[1] The trial referee's findings of fact, which were adopted by the employment security board of review, are as follows:

"1. The claimant has taken an appeal from a determination of the Administrator which denied benefits from May 19, 1985, on the ground of a voluntary termination of employment without good cause.

"2. The claimant was employed part-time as a receptionist at the optimetrical firm of Furze and Ackley. She worked Monday through Wednesday and her hours were from 10:00 A.M. until 4:00 P.M. She earned $4.25 per hour. She was unhappy with her work because she felt she deserved a higher rate of pay and had asked her employers for a raise. She was told that she could not have a raise during the week that she quit.

"3. The employers were unhappy with the claimant's services. She had difficulty staying until 4:00 P.M. as she was scheduled preferring to come in early and leave early. This upset the owners. She also treated the store as an extension of herself. When she was there she would receive personal

utes (Rev. to 1985) § 31-236 (2) (A),[2] because she quit her job voluntarily and without "cause."

The plaintiff appealed the decision of the appeals referee to the employment security board of review (board). The board adopted the appeal referee's findings as its own, affirmed the decision and dismissed the plaintiff's appeal.

The plaintiff then appealed the board's decision to the Superior Court, *F. Freedman, J.,* which sustained the appeal and remanded the matter "for proceedings consistent with this opinion."

The board, on remand, again reviewed the record in the plaintiff's case, including the tape recording of the hearing before the referee. On the basis of its review of the record, the board made further findings of fact[3] and again concluded that the plaintiff had left suitable work voluntarily and without "cause" within the meaning of General Statutes (Rev. to 1985) § 31-236 (2) (A).

telephone calls and had members of her family with with her while she was on duty. It was felt that this detracted from the purpose of the store.

"4. The precipitating incident occurred when a Mrs. Gold came in for her glasses. The claimant had called this customer on the previous day to tell her that only her reading glasses were ready and that she would have to wait for her long distance glasses and the glasses for her husband. The customer believed that all the glasses were ready and demanded them of Mr. Ackley who was waiting on her. Mr. Ackley, in turn, sought out the claimant who was in charge of these matters. After a heated exchange of words, the claimant terminated her work."

[2] General Statutes (Rev. to 1985) § 31-236 (2) (A) provides in pertinent part: "An individual shall be ineligible for benefits . . . (2) (A) if, in the opinion of the Administrator, he has left suitable work voluntarily and without sufficient cause connected with his work, provided no individual shall be ineligible for benefits if he leaves suitable work for cause, including leaving as a result of changes in conditions created by his employer, or until such individual has earned at least ten times his benefit rate . . . ."

[3] The board's expanded findings of fact, filed in response to the court's remand, are as follows:

"1. The claimant was employed as a part-time receptionist with the subject employer for approximately six years. Her hours were from 10:00 a.m.

The plaintiff appealed that second decision of the board to the Superior Court. The administrator moved for judgment dismissing the plaintiff's appeal on the ground that the latest decision of the board was not arbitrary, unreasonable or illegal. A state trial referee, *Hon. Irving Levine,* in his capacity as the trial court, denied the administrator's motion for judgment, concluding that the prior decision of the court had not authorized the board on remand to make new findings and a new decision but rather had validated the plaintiff's application for benefits. The trial referee, therefore, sustained the plaintiff's appeal and ordered that she be paid benefits. The administrator thereafter filed this appeal.

The administrator claims that the trial referee erred (1) in concluding that the prior decision of the trial court did not authorize the board, on remand, to conduct further proceedings in connection with the plaintiff's application for unemployment compensation benefits, and

---

to 4:00 p.m., three days per week, and her rate of pay at the time of separation was $4.50 per hour.

"2. The claimant voluntarily terminated her employment on May 22, 1985, following a dispute with Lawrence Ackley, one of two partners in the firm.

"3. The dispute with Mr. Ackley occurred while Mr. Ackley was waiting on a customer. The customer had called earlier in the day to determine whether several pairs of glasses which she had ordered were ready. Although the claimant had informed the customer on the telephone that only one pair of glasses had come in, when the customer spoke to Mr. Ackley, she insisted that she had been informed that her entire order was ready. The claimant had informed Lyle Furze, the other partner in the firm, of her conversation with the customer.

"4. Because Mr. Ackley was not familiar with the customer's order, he inquired of the claimant, who was performing work in the back room. When Mr. Ackley asked the claimant about the missing pair of glasses, the claimant replied that she already explained the situation to Mr. Furze.

"5. Mr. Ackley then yelled at the claimant, 'Where are they?'

"6. The claimant told Mr. Ackley that that was the last time he would yell at her and that she was quitting at once.

"7. The exchange between Mr. Ackley and the claimant was limited to the dialogue set forth in findings of fact numbers 4 - 6. Although voices

(2) in improperly substituting its judgment for that of the board by granting the claimant unemployment benefits. We agree with the administrator's first claim.

In its memorandum of decision, the trial court, *F. Freedman, J.,* expressly stated: "It cannot, however, be said that as a matter of law there was but one conclusion that could have been reached by the referee. The court therefore, can go no further than to sustain the appeal. 'For the court to go further and direct what action should be taken [by the administrative agency] would be an impermissible judicial usurpation of the administrative functions [of the administrative agency].' *Bogue* v. *Zoning Board of Appeals,* 165 Conn. 749, 754, 345 A.2d 9 (1974); see also *Denby* v. *Commissioner,* 6 Conn. App. 47, 502 A.2d 954 (1986)." (Brackets in original.) Thereupon, the court remanded the matter to the board for "proceedings consistent with this opinion." The court's language clearly indicates that it did not intend to direct the board to find a particular result. The cases cited by the court, *Bogue* v. *Zoning Board*

were raised, no invective or offensive language was used, and Mr. Ackley expressed no criticism of the claimant.

"8. The claimant believed Mr. Ackley to be a difficult person to get along with and a difficult employer to satisfy. Although the claimant experienced no difficulties with Mr. Furze, she had had several previous disagreements with Mr. Ackley.

"9. Approximately seven months prior to the final incident, the claimant had had an argument with Mr. Ackley over her request for a raise. Mr. Ackley had become very excited during the argument and had pointed his index finger at her face.

"10. The claimant had been unsatisfied with her wages for some time. Within ten days of the final incident, the claimant had again requested a raise. No action had been taken on her request, and the claimant correctly understood that her request would not be granted.

"11. The claimant's primary motivation for quitting was her dissatisfaction with the personality and behavior of Mr. Ackley. The claimant was also motivated to leave by her dissatisfaction with her wages and the denial of her request for a raise.

"12. The claimant had not sought professional assistance for job-related stress and had not received professional advice to leave her job."

*of Appeals,* supra, and *Denby* v. *Commissioner,* supra, clearly support the trial court's action of remanding the matter to the administrative agency for further proceedings where more than one conclusion could be drawn by the agency. See also *Persico* v. *Maher,* 191 Conn. 384, 410, 465 A.2d 308 (1983); *Hartford* v. *Hartford Electric Light Co.,* 172 Conn. 71, 73, 372 A.2d 131 (1976); see *Watson* v. *Howard,* 138 Conn. 464, 86 A.2d 67 (1952). The state trial referee did, in essence, exactly what the first trial court had declined to do, namely, reverse the decision of the board and direct the administrator to grant unemployment benefits to the plaintiff. Such action was erroneous.

Because we find error on the administrator's first claim, it is unnecessary for us to consider his second claim of error.

There is error, the judgment sustaining the appeal is vacated and the case is remanded for a hearing on the merits of the plaintiff's appeal.

In this opinion the other judges concurred.